Argued March 23, affirmed April 14, rehearing denied June 2, 1914.

## KUCKENBERG v. DURKEE.[*]

(140 Pac. 627.)

**Brokers—Relations to Principal—Validity of Contract.**

Where a real estate agent was authorized to sell a house and lot at a certain price, the purchaser to assume the street improvement assessments, and drew a contract of sale, omitting reference to the assessments, which the owner signed without having noticed the omission, which contract was made by the agent for his own benefit with a third person, it was not binding on the owner, and will be canceled at his suit.

[As to validity of sale or transfer by agent to himself, see note in Ann. Cas. 1912A, 1772.]

[*]As to the right to commission where broker procures purchaser at price stated by his principal, but on slightly different terms in regard to cash or time of payment, and the owner refuses to consummate the sale, see note in 21 L. R. A. (N. S.) 935.     REPORTER.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is a suit by Wiliam Kuckenberg against Wilma W. Durkee and John P. Durkee, to cancel a contract of sale as a cloud upon the plaintiff's title to lot 7, block 1, East Irvington Addition, Portland, Oregon. The Circuit Court rendered a decree in favor of plaintiff, and defendants appeal therefrom.

The controversy arises out of the following facts: On September 6, 1911, plaintiff executed the following instrument:

"To John P. Weston: For a consideration of one ($1.00) dollar, the receipt of which is hereby acknowledged, I hereby appoint you my exclusive agent, to make sale of the real property described as house and lot at 437 E. 25th Street North, lot 50x100, for the price of $1,900.00, upon the following terms: $1,000.00 cash, $900.00 secured by mortgage thereon for four months at six per cent, and you are hereby authorized to accept a deposit to be applied on the purchase price and to execute a binding contract of sale on my behalf. I agree to pay you, my said agent, the regular commission fixed by the Portland Realty Board, or $75.00, if a sale is made during the life of this contract, and to convey said property to the purchaser by good and sufficient deed. I also agree to furnish satisfactory abstract of title. This contract to continue and including October 6th, 1911."

Plaintiff alleges in effect: That the agreement with Weston was that, in addition to the sale price named, the purchaser should assume and pay assessments on the property for street improvements amounting to $326.50. That Weston pretended to reduce the agreement to writing, and wrongfully and intentionally left the street assessment provision out of the agency contract which he represented to plaintiff contained all

the terms of the agreement, and that plaintiff believing the same and relying thereon signed the writing as prepared.   That on October 6, 1911, defendant Weston fraudulently, and with intent to cheat and defraud plaintiff and secure his property for a less sum than had been agreed upon (as plaintiff's agent and in his name), pretended to make and execute in writing a contract of sale of the real estate in question to defendant Wilma W. Durkee at the price of $1,900, less $75 commission, payments to be made as follows: $100 upon the execution of the contract; $825 on October 11, 1911; and for the balance Wilma W. Durkee agreed to assume $900 of a certain mortgage of plaintiff.   That this contract was acknowledged by her and recorded in the deed records of the county and is a cloud upon the title of plaintiff.   That defendant Wilma W. Durkee is a mere figurehead in the deal, and holds whatever interest she has under the pretended agreement for Weston.   That said recorded contract is not in accordance with the terms of the sale Weston was authorized to make nor in accordance with the agency contract set out above.

Defendants answered and denied the fraud, admitted the contract with Durkee, and alleged in substance that plaintiff had agreed to accept Weston, his agent, as a purchaser of the property, and is estopped to say that Weston is not a satisfactory purchaser; that Wilma W. Durkee is not bound to pay or assume the street assessment.   They pleaded a tender made on October 11, 1911, of $1,000, as per the sale agreement, an offer to assume the mortgage to the extent of $900 or execute a new one for that amount, and asked that the contract of sale be enforced.

William Kuckenberg, plaintiff testified in substance that Weston came to his house and asked if the prop-

erty was for sale; that the latter agreed that he could sell it for $1,900 above the street improvements, out of which his commission of $75 was to be taken; that Weston asked how much the street improvements were, and that he told the boy to look it up; that he said that he knew it was $326 and some cents; that Weston said he would come down to the store and draw the contract to that effect; that he drew the contract, and that he (Kuckenberg) read it; that they were busy at the time; that, after Weston was gone, he looked it over again and noticed that the former did not put the street assessment matter in the contract; that three days before the contract expired Weston came and wanted an abstract of title; that "he didn't write down the street improvements which is supposed to be in there; therefore I was afraid to let him have it"; that Weston wanted to make a sale and he went to his lawyer then.

William Kuckenberg, Jr., son of plaintiff, testified to the effect: That at the time the matter of sale was talked about at the store, by plaintiff and Weston, when they came down to the street improvements Weston said: "How much are the improvements?" That he told him it was $326, and some cents. That Weston wrote the contract, and that he started to read one, but was interrupted several times by customers. That they finally signed them, and that when Weston was gone it was noticed that he had omitted the street improvements. It appears that the contract of sale was first written with Weston's name inserted therein, which name was afterward changed to Mrs. Durkee. The evidence tends to show that, when the matter first came up, Weston said that he knew about the street assessment. The contract for the sale was first written and submitted to plaintiff with a provision that the purchaser should pay a street assessment of $300.

Plaintiff would not consent to a reduction of the amount, and defendant Weston declared that he would stand on the agency contract. The $300 claim was afterward stricken out. John P. Weston, one of the defendants, testified to the purport that he tendered plaintiff $1,000 pursuant to the sale contract, and that the same was refused; that they objected because the street improvements were not provided for. He did not touch upon the matter relating to the agency contract. It further appears from the evidence that the abstract of title was obtained October 5, 1911; that Weston's · money was tendered; that Mrs. Durkee signed the contract at the request of Weston.

AFFIRMED.

For appellants there was a brief over the names of *Mr. George Rossman* and *Messrs. Wilson & Neal,* with an oral argument by *Mr. Rossman.*

For respondent there was a brief over the names of *Messrs. Chamberlain, Thomas & Kraemer* and *Mr. Lester W. Humphreys,* with an oral argument by *Mr. Otto J. Kraemer.*

MR. JUSTICE BEAN delivered the opinion of the court.

It is contended by counsel for defendants that there was error in overruling the demurrer to plaintiff's complaint and in rendering a decree in favor of plaintiff. The same questions are involved in each proposition, and they may be considered together. It is clear that Weston was the real party in interest in the contract of sale. When the plaintiff appointed Weston as his agent to sell the real estate and signed the agency contract, a fiduciary relation was created between them. Good faith and loyalty to his principal

required Weston to act solely in the interest of
Kuckenberg, and he could not, without the full knowl-
edge and free consent of the latter, become the pur-
chaser of the property either directly or through the
medium of a third person. Weston was bound to dis-
close to his principal the exact nature of his interest
in the purchase and all material facts connected. The
mere fact of purchase by such agent makes the con-
tract *prima facie* voidable. In order to sustain the
sale, the burden was upon Weston to show that Kuck-
enberg, with a full knowledge of all the facts, con-
sented to such a sale, and that the same was fair.
This he has wholly failed to do. Instead of consenting,
plaintiff objected, unless the street lien was paid by
the purchaser: *Tilleny* v. *Wolverton,* 46 Minn. 256
(48 N. W. 908); *Rochester* v. *Levering,* 104 Ind. 562
(4 N. E. 203); 31 Cyc. 1437 et seq.; Mechem, Agency,
§ 643; *Franck* v. *Blazier,* 66 Or. 377 (133 Pac. 800,
802); *Savage* v. *Savage,* 12 Or. 459, 470, 8 Pac. 754.
The plaintiff desired to sell the real estate in question
for the price of $1,900, besides the street assessment
thereon of $326.50. Weston drew the agency contract
authorizing the sale. The provisions in regard to the
purchaser assuming or paying the street lien was
omitted from the contract through the fault of Wes-
ton. As the evidence shows, Kuckenberg never con-
sented that Weston or anyone else should become the
purchaser of the property for $1,900, or the amount
for which the contract of sale was made, without such
purchaser assuming or paying for the street improve-
ment. The contract executed by Weston, as agent, in
the name of plaintiff, was unauthorized. It was made
for Weston's benefit. Mrs. Durkee has no interest
in the same except for Weston. It would be inequi-
table to allow Weston to take an advantage to the

amount of $326.50 by virtue of the agency contract. Plaintiff had a right to rely upon Weston, as his agent, to properly prepare the agreement according to the undisputed terms of sale which Kuckenberg stated to him when he came to the latter's house and inquired if the property was for sale. In his testimony Weston does not contradict the statements of plaintiff and his son in regard to the terms of sale; that is, that the street lien should be paid by the purchaser in addition to the $1,900. Defendant Weston now seeks to take advantage of his own wrong in not properly drawing the contract, and asks that such an unfair proceeding be sanctioned in a court of conscience by enforcing a contract of sale made in his own interest against the protest of his principal when the matter of the contract of sale was first broached. Plaintiff has never ratified the contract in any way. This case is not like that of *Hawkins* v. *Hawkins,* 50 Cal. 558, and other cases relied upon by defendants' counsel, where no relation of especial trust or confidence exists between parties entering into a contract written by one of them. Weston had Mrs. Durkee sign the contract of sale for him in order to conceal from Kuckenberg the true nature of the same; that he was the real purchaser. A court of equity should not enforce the contract. Our view upon this phase of the case renders it unnecessary to consider the other questions raised and argued. The contract should be canceled.

The decree of the lower court was right, and it is affirmed.                                        AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.