[1] Reported in 272 N.W. 779.
Frederick Sprain, a resident of Rice county, this state, died intestate on November 5, 1933, survived by his widow, Wilhelmine Sprain, and two daughters, Paulina Meinke and Amanda L. Grieger, the latter one of the appellants herein.
On December 18, 1933, letters of administration were issued by the probate court to William H. Meinke, husband of the above named Paulina Meinke. Thereafter he duly qualified as such administrator. On March 19, 1934, the said William H. Meinke, as administrator, filed in the probate court of Rice county a petition for license to sell certain real estate belonging to decedent at the time of his death, being the real estate involved herein. A hearing was had upon said petition, pursuant to notice duly given, on April 16, 1934, on which date the probate court issued an order duly licensing and authorizing the representative of the estate to sell the real estate referred to in the petition at private sale. Subsequent to the issuance and filing of said order of license the representative filed his oath and bond as required by law, and the bond was duly approved by the probate court. He also caused the real estate to be appraised by appraisers appointed by the court. The appraised value was fixed at the sum of $8,500.
On June 30, 1934, William H. Meinke, as representative, filed in the probate court of said county a report of sale. This report showed that he had made sale of said real estate to Wilhelmine Sprain and Paulina Meinke, as joint tenants, for the sum of $8,500. Wilhelmine Sprain was the surviving wife of the decedent, Frederick Sprain and Paulina Meinke is the wife of William H. Meinke, the administrator. On the same day the probate court made its order *Page 513 
confirming the sale and directing the representative to execute and deliver to the purchasers a good and sufficient deed of conveyance upon their complying with the conditions of said sale. The representative on the same day executed to the purchasers an administrator's deed purporting to convey to them the involved premises.
It appears that in 1930 decedent advanced to his daughter Amanda $2,500 in cash and guaranteed to one John Tupa the payment of her note in the further sum of $3,000. Amanda thereupon gave to decedent her note for $5,500, which note was in existence at the time of decedent's death and was inventoried as an asset in his estate. The note for $3,000 in favor of John Tupa which decedent signed for his daughter Amanda was filed and allowed as a claim against his estate. It also appears that subsequent to the sale the purchasers executed to John Tupa a mortgage on the land in question.
On July 7, 1934, the representative of the estate filed a petition in probate court which recited among other things that decedent during his lifetime had advanced to his daughter Amanda sums of money aggregating $5,500; that said sums so advanced exceeded the share of the said Amanda in decedent's estate; asked that the note of the said Amanda for $5,500 be treated as an advancement instead of an asset of said estate; and petitioned that it be determined that the said Amanda was not to receive anything further from the estate as an heir. On the same day Amanda executed and filed an acknowledgment of such advancement and requested that the petition of the representative be granted. By separate instrument the purchasers of the real estate, Wilhelmine Sprain and Paulina Meinke, consented to the granting of such petition. On July 23, 1934, said Amanda, by another separate instrument, attempted to withdraw the previous petition and consent, but no action was ever taken thereon, nor does the record disclose that any action was taken by the probate court on the petition of the administrator to declare the note given by Amanda, hereinbefore referred to, as an advancement.
Amanda and her husband were also indebted to the State Bank of Webster upon a separate note. On November 17, 1933, the commissioner *Page 514 
of banks, as statutory liquidator thereof, brought suit on this note against the makers and obtained a default judgment. This judgment rendered in the district court of Rice county December 9, 1933, was in the sum of $3,643.82. It was docketed in the district court of Scott county on December 14, 1933, subsequent to which an execution was issued, and an undivided one-third interest in the real estate was levied upon by the sheriff of Scott county, as the property of said Amanda.
On April 27, 1934, this interest was sold under execution sale to State Bank of Webster, and a certificate of sale was duly issued by the sheriff to the bank subject to the right of redemption. There was no redemption from the execution sale. On July 24, 1934, and subsequent to the execution of the administrator's deed to the purchasers, the commissioner of banks, as liquidator of the State Bank of Webster, appealed to the district court of Rice county from the order confirming the sale.
On July 28, 1934, Amanda petitioned the probate court of Rice county for an order vacating the order confirming such sale. On December 3, 1934, the probate court filed an order denying her petition. From this order Amanda appealed to the district court of Rice county.
The two appeals were consolidated and heard as one case. Most of the facts were stipulated by the parties, and the orders appealed from in both instances were affirmed by the district court. From the respective orders denying appellants' motions for a new trial these appeals were taken.
Each appellant contends that the sale of the real estate in question to Paulina Meinke was in violation of 2 Mason Minn. St. 1927, § 8847, and therefore void. In view of the conclusion the court has reached, it is unnecessary to determine which appellant has a right to prosecute this appeal or to consider the effect of the sale insofar as the rights of Wilhelmine Sprain therein are concerned.
1. The first question presented in the case has to do with whether the sale insofar as it was made by the administrator to his wife was void or voidable. 2 Mason Minn. St. 1927, § 8847, reads as follows: *Page 515 
"No representative making the sale shall directly or indirectly purchase or be interested in the purchase of any part of the real estate so sold, and all sales made contrary to the provisions of this section shall be void."
Our court in the early case of White v. Iselin, 26 Minn. 487,493, 5 N.W. 359, 364, thoroughly considered the effect of the terms "void" and "voidable" in construing a statute practically identical with § 8847, and reached the following conclusion:
"We think the word 'void' in this statute was used in the sense of voidable, and the sales prohibited are void, as they were void before — that is, at the election, timely exercised, of those interested in the land sold. Such election could not be exercised against a bona-fide purchaser."
Here we have, at least as far as the record in this case is concerned, one bona fide purchaser, as there is nothing in the record that would justify a finding to the effect that the sale, insofar as it was made to Wilhelmine Sprain, was not bonafide. Fraud could not be inferred as to her. Cain v. McGeenty,41 Minn. 194, 42 N.W. 933.
At common law a sale by an administrator to himself was not void but voidable at the election of the heirs. Baldwin v. Allison, 4 Minn. 11 (25); Michoud v. Girod, 4 How. (U.S.) 503,11 L. ed. 1076; Davoue v. Fanning, 2 Johns. Ch. (N.Y.) 252.
Fraud would be presumed in a sale by an administrator in which he was directly or indirectly interested. Such a sale is fraudulent as a matter of law, and the interested heirs may exercise their option to avoid it without proving more than the mere fact of selling. King v. Remington, 36 Minn. 15,29 N.W. 352; Lewis v. Welch, 47 Minn. 193, 48 N.W. 608, 49 N.W. 665; Turner v. Fryberger, 94 Minn. 433, 103 N.W. 217,110 A.S.R. 375; Ottawa B. T. Co. v. Crookston State Bank, 185 Minn. 22,239 N.W. 666. Though the price is fair and no dishonest intent is present, no fraud in fact need be discovered to set aside such a transaction, McClear v. Root, 147 Wis. 60,132 N.W. 539, and this rule holds even where *Page 516 
the principal sets the price and the fiduciary purchases, without the knowledge of the principal, at that price. Tilleny v. Wolverton, 46 Minn. 256, 48 N.W. 908. In the case of Brown v. Fischer, 77 Minn. 1, 79 N.W. 494, it was held that a sale by a guardian to her husband of minor's property was one in which she was indirectly interested and therefore voidable.
2. In this case, however, the real estate in question was sold under license of the probate court, the sale was confirmed, and a deed was executed to the purchasers under authority of the order of confirmation. That raises the question as to whether after confirmation of a sale made in a proceeding in which the probate court had jurisdiction that court can review its action and vacate and set aside the order of confirmation and subsequent proceedings dependent thereon. It also raises the question as to whether such a sale can be attacked in a collateral proceeding or whether it must be attacked in a direct action in which all of the interested parties are made parties. It was held in State ex rel. Prendergast v. Probate Court, 19 Minn. 85 (117), that the confirmation of a sale of real estate by the probate court exhausts the authority of the court over the subject-matter of the sale so that it cannot afterwards vacate the same. There the court said (19 Minn. 92):
"The authority of the probate court over the subject-matter of the sale of this real estate was exhausted when it had confirmed the sale. Its power over the proceeds of such sale in the hands of the executor would be an entirely different matter, as would be the rights and remedies in said court of those interested in such proceeds."
In the later case of State ex rel. Lindekugel v. Probate Court, 33 Minn. 94, 96, 22 N.W. 10, 11, the same rule was followed. There the court said:
"Where sale proceedings have culminated in an order confirming the sale and directing a conveyance, and the execution of a deed accordingly, any contest as to the legal effect and validity of the proceedings, and as to the rights thereby acquired, must be between *Page 517 
the purchaser, who in that character has no interest in the distribution of the estate, and the representative of the estate, or heirs or devisees. The question is, then, one not of administration, but of adverse claims to the property; a question which must be determined by some other tribunal than the probate court. The title acquired by the proceedings must be impeached, if at all, in such other tribunal."
This court in the case of Mosseau v. Mosseau, 40 Minn. 236,239, 41 N.W. 977, 978, in referring to the case of State ex rel. Lindekugel v. Probate Court, just referred to, said:
"That case determined that after a sale, perfected by confirmation and conveyance, under a license from the court, it has no jurisdiction to determine a controversy between the purchaser and those interested in the estate as to the legal effect and validity of the sale."
In the recent case of State ex rel. Nelson v. Probate Court,199 Minn. 297, 303, 271 N.W. 879, 882, this court considered a question somewhat analogous to the question involved herein. We quote from the opinion in that case:
"The probate court is vested with constitutional power of full and exclusive 'jurisdiction over the estates of deceased persons and persons under guardianship, but no other jurisdiction, except as prescribed by this constitution.' While thus original 'jurisdiction of the administration proceeding, and of matters necessarily incident thereto, is exclusive and complete in the probate court,' and 'in administering the estate it applies equitable principles and exercises equitable powers,' it nevertheless possesses `no independent jurisdictionin equity or at law over controversies between therepresentatives of the estate, or those claiming under it, withstrangers claiming adversely, nor of collateral actions.'
(Italics supplied.) Wilson v. Erickson, 147 Minn. 260, 261,262, 180 N.W. 93, 94. Here, as in the cases just cited, 'to get the complete relief asked,' strangers to the probate proceedings, 'claiming adversely' to the representative, 'must be parties to a decree in equity which will bind and protect *Page 518 
all.' (147 Minn. 262.) To accomplish that result the probate court is clearly impotent because it lacks jurisdiction.
"That the constitutional limitation of the jurisdiction of our probate courts necessarily excludes the equity power to rescind contracts between an executor, administrator, or guardian and a third party, otherwise a stranger to theres, is the settled rule of our decisions." (Citing numerous cases.)
2 Mason Minn. St. 1927, § 8857, provides as follows:
"In case of an action relating to any estate sold by a representative in which an heir or person claiming under the decedent, or a ward or person claiming under him, shall contest the validity of the same, it shall not be avoided on account of any irregularity in the proceedings if it appears:
"1. That the representative was licensed to make the sale by the probate court having jurisdiction.
"2. That he gave a bond, which was approved by the probate court.
"3. That he took the oath prescribed in this chapter.
"4. That he gave notice of the time and place of sale as in this chapter prescribed, if such notice was required by the order of license.
"5. That the premises were sold in the manner required by the order of license, and the sale confirmed by the court, and that they are held by one who purchased them in good faith."
Here the representative was licensed to make the sale by a probate court having jurisdiction; he gave bond, which was approved by the court; he took the oath prescribed by law; he complied with all requirements of the order of license as to notice and place of sale; the premises were sold in the manner required by the order of license; and the sale confirmed by the court. The court would be justified on the record in finding that the sale was made to persons who purchased them in good faith.
We therefore hold that if the proceedings which the appellants claim are void or voidable under the statute are to be attacked they *Page 519 
must be attacked in a direct proceeding in a court of competent jurisdiction and in an action in which all of the interested parties are joined.
Orders affirmed.
MR. JUSTICE STONE took no part in the consideration or decision of this case.