Mr. Justice Lipscomb,
after stating the facts of the case, delivered the opinion of the court, Mr. Justice Wheelee not sitting.
The appellant’s counsel contends that the court below erred in refusing to give the instructions asked to the jury and set *135 iortb in tbe bill of exceptions, and in support of bis position has referred the court to the Constitution of Coahuila and Texas, Preliminary Provisions, section 13, page 314. The article referred to is in the following words, i. e.: “ From and after the promulgation of the constitution in the capital of each district, no one shall be born a slave in the state, and after six months the introduction of slaves under any pretext shall not be permitted.” Whether the section cited ever was binding and valid in Texas or not is wholly immaterial to sustain the correctness of the court in refusing the charge asked; because the claim of the property in the slave before the date of the •constitution of Texas was not repugnant to the section cited from the constitution of Coahuila and Texas. The slave, if born before the date of the promulgation or introduced within six months from its date, could be held in slavery. The constitution of Coahuila and Texas was adopted 11th March, 1827; when it was promulgated in the capital of the several •districts, if ever, we are not informed. But as a matter of history, it is said never to have been published in the department ■of Texas. But this, as we have before observed, is not material, because in the absence of proof to the contrary, we are bound to believe that the claim to her as property was not repugnant to law.
The next objection presented by the appellant’s counsel is to the refusal of the court below to set aside the verdict and grant a new trial. The motion was based on the fact that there was no evidence that the slave was worth more than nine hundred dollars, consequently the excess over that amount found by the jury was unsupported by the evidence; and if the plaintiff had insisted on the full amount so found by the jury, there would have been good grounds for granting the motion for a new trial, but the remittitur of the three hundred dollars reduced the amount to a sum corresponding with the evidence, and removed all the ground for the motion. This is the common practice where the jury go beyond the evidence in the amount of damages, when the evidence is not very precise as to the amount, but varying as to different sums in suits of this sort, it has always been held competent for the jury to assume *136 the highest amount. Nor is there any hardship in their so doing, because if valued too high, the party can relieve himself from payment by accepting the alternative and giving up the property sued for.
The appellant’s counsel contends that the verdict is so defective that no judgment could be rendered-on it, disposing of' the case, and that a venire de novo ought to have been awarded. Tie has labored this point with great earnestness, endeavoring-to fortify his position by various common law authorities, on the form of a verdict in the, common law action of detinue. It is, however, believed to be a sufficient answer to those authorities, to say that the common law forms have never been observed in our courts, nor indeed could they be, consistently with our system of jurisprudence. With us, suits are-brought before our courts for hearing, by petition and answer; we recognize no distinction between law and equity, and have-no such actions as trover and detinue; we are not very tenacious of forms; if the petition shows a good cause of action,, and the jury should, with a certainty to common intent, find the truth of such facts as will enable the court to give by its judgment the remedy sought by the suit, it is considered sufficient. The facts found by the jury are easy to be comprehended ; they say “ they find for the plaintiff twelve hundred dollars, or the return of the woman.”
On applying this finding of the jury to the facts charged in the petition, we can be at no loss for the meaning of the-verdict. It clearly expresses two objects- — -that the woman, of right, belonged to the plaintiff, and her value. These facts being found, the court could but render judgment in accordance with them.
It is further contended that there is error because two-distinct judgments have been entered in one case, the last not setting aside the first. , The record shows that immediately following the verdict an informal judgment is entered, as follows: It is therefore “ordered and adjudged that the plaintiff recover of the defendants the amount as assessed by the jury,, and the further sum of her cost by him in this behalf.” The entry is. so entirely defective, and so far from conformity with *137 the verdict, that is does not merit the. name of a judgment, and was correctly considered by the court as a nullity, at most; it was no more than an irregularity of the clerk’s, which the judge was bound to correct as soon as known; and surely it ■was not of a character that should occupy the time of this 'court after the remittitur had been entered and the motion for a new trial overruled. The judgment and decree was entered -up by the court, to the form or substance of which we can see no objection.
It is contended that there is error in the finding of the jury, in this, that hire for the detention of the slave has been given after the commencement of the suit, when it should only have been computed for the time previous thereto. It is believed to be well settled that where the suit is brought to recover the specific property, and damages for its detention, if the property sued for be a slave, that damages for the ■hire should be computed from the time of the demand to the rendition of the judgment; if no special demand is proven, the service of the writ is the time for -which the damages should be computed. Carrol v. Pathkiller, 3 Porter, 280. Another ground of error relied on is, that the suit is against the defendants in their representative character. There may have been some diversity of opinion to be found on the subject, but it is now considered as well settled, both on principle and the authority of adjudged cases, that where property has passed from the possession of the deceased to the possession of his legal representative, that the person claiming a better right to such property may elect to sue the defendant in possession, either in his individual or representative capacity.
This question was discussed with great ability by Chief Justice Collier, in Brewer v. Strong’s Ex’r, 10 Ala. N. S. 961, and resulted in a concurrence with the following conclusions of the court in Cattlet’s Ex’r v. Russell, 6 Leigh, 344: 1st. The thing sued for, which is demanded in specie, must have come to the hand of the executor himself, and be detained by him, to justify the action of detinue against him. 2d. That ■in an action of detinue against an executor, it is absolutely ■necessary to show that the testator had possession of the prop *138 erty before bis death. 3d. That although an executor or administrator is chargeable as such where he has succeeded to the possession of a chattel which the testator or intestate enjoyed up to the time of his death, yet one having a superior legal title may at his election maintain an action of detinue charging him in his representative or individual capacity. The petition in the case under consideration does not aver the facts of the possession in the intestate and in his representative; and -if exception had been taken at the proper time on account of these omissions, the petition would doubtless have been adjudged insufficient to sustain the action. And advantage could be claimed in this court, if all the facts in proof had been sent up, and there had been no proof of such possession in the absence of such statement of facts, and the want of such proof not otherwise appearing, we are bound to presume the evidence was sufficient to sustain the action. But we are not left to the influence of this rule in support of the verdict; the record shows that possession and demand was-admitted, and we must understand the admission to be such demand and possession as would sustain the action.
The only remaining objection to be noticed is, to the correctness of the judgment rendered on the finding of the jury. It is said the judgment is against the defendants in their individual, when it should have been in their representative capacity. The suit is against them as administrators; and if a fair construction of the judgment is against them individually, it is certainly erroneous. We believe, however, that the judgment will not bear that construction. It is the usual practice, after a party has been brought into court by his name, when he is afterwards referred to on the record, to call him the defendant; so when he is sued in a representative capacity, to use his proper name with the addition of- the character in which he is sued, and subsequently to refer to him as the defendant in the action; and if the judgment designates him as defendant, it means nothing more than the capacity in which he Has been.sued, which is shown with certainty by the record. Had the judgment charged them affirmatively in their proper persons when the record showed they had been .sued as .the *139 representatives, it-would have been error, but it does no such thing; it is entered against them, not in their individual names, but as defendants, clearly to be understood representative defendants. The judgment is affirmed.